**GOSHO COTTON COMPANY**

v.

**UNITED STATES of America.**

Civ. A. No. 8886.

United States District Court
N. D. Texas,
Dallas Division.

Sept. 28, 1962.

Sylvan Tobolowsky, Dallas, Tex., for plaintiff.

Barefoot Sanders, U. S. Atty., Joseph McElroy, Asst. U. S. Atty., Dallas, Tex., for Government.

DAVIDSON, District Judge.

This is a tax case in which the plaintiff seeks the recovery of taxes and interest allegedly paid that were not in fact due. The government contests the case.

It grows out of cotton transactions between the plaintiff Gosho Cotton Company and the Commodity Credit Corporation acting for the United States.

To fully grasp the controversy we might look back into the history of the legislation and program that led up to the transaction. It was apparently the purpose and intention of the government to fix a loan value on cotton at a price that it was thought the farmer could afford production and at some profit to himself. This price was established as a loan value and if the market was not high enough for the farmer to sell his cotton in the trade he could take it to the government warehouse and secure a loan at the loan price fixed by regulation, the idea being that the government would store the cotton and when there was a short year when there was not enough cotton to meet the demands of the market the cotton could then be sold without loss to the government and enable the cotton farmer to average the good and bad years. However, the effect was more or less a more international one rather than a local one.

The theory of creating a warehouse to carry over for the bad years might be good for a county or even a larger district, but when applied internationally the loan value fixed by the government had the effect of raising the price of cotton in all those countries where they were raising it very cheaply. For instance, Mexico has become a cotton producer much greater than before and it is said that the growth of the town of Matamoros was due to its great temporary boom to the cotton business that has grown up around it. And therefore the market has never gone high enough for the government to unload its warehouses and the cotton in the warehouses continues to pile up in greater quantities from year to year.

Now the plaintiff is an exporter of cotton, principally to Japan. The government is ready and we might say anxious to reduce its stockpile of cotton whenever buyers can be had. It will sell cotton to exporters if the exporter obligates

himself to buy other cotton on the market so as to replace that which he has bought and sold perhaps in a domestic way.

The Commodity Credit Corporation handles these transactions and has issued a program stating under what conditions it will sell cotton and what are the obligations of the purchaser. When an exporter buys cotton under that program the arrangement between him and the Commodity Credit Corporation if it were made between private concerns would amount to a contract. The exporter under the terms of this program, or otherwise called contract, buys his cotton on a current year running from August to August which is the period provided for in the program or contract upon which the parties act. Thus, in the fall of the year following August the plaintiff in the case bought cotton from the Commodity Credit Corporation and sold it locally realizing a substantial profit of approximately $90,000.00 for the year of 1956, the same being one of the years covered by this suit. This profit had been realized at a midway station of the life of his contract with the Commodity Credit Corporation people, because he was obligated now since he had sold this cotton locally to buy the same amount of cotton on the market which would be exported to replace that which he had sold locally. Under his program or contract his year's business would terminate in August 1957 and it could not be known just what his net taxable profit would be if it were figured under the program. But the program year crosses or overlaps the taxable year so that on the 1st of January following the last day of December in 1956 the government is entitled to an accounting of his taxable income.

If we saw off the transaction at this place he must pay tax on the $90,000.00 profit which accrued during the first half period so to speak of his current year contract under the program. Now when the current year had expired on the 1st of August 1957 he had under the terms of his contract or program bought replacement cotton to take the place of that which he had bought out of the warehouse and he was obligated to export it or to pay certain profits or penalties to the government. When he had bought this cotton under the program and exported it or complied otherwise with the second part of the program, instead of having a profit of some $90,000.00 it was greatly reduced to almost no profit. Yet the government under the tax law claimed the profit that had accrued up to the 1st of January 1957, whereas the taxpayer insists that when the contract was complete there was little or no profit on the 1st of August 1957.

He therefore insists that his tax should be computed on a contract basis for the whole year thereof instead of the half year in which his profits accrued.

Many inequities of this kind have appeared in the years gone by and the government has undertaken by legislation to enable the taxpayer to bring forward into 1957 or the coming years any losses that he has sustained and have them computed in that particular, and in the same way for 1957 and 1958. This was in accordance with the amended act contained in Title 26, Sec. 172, U.S.C.A.

This was supposed to overcome the inequalities encountered by the taxpayer for profits and loss that would occur in the current taxable year. It is not a complete remedy in all cases. For instance, if after the plaintiff had paid his tax on the $90,000.00 income he had gone out of business, he would have no income tax return the following year upon the basis of which he could make any recoup of his excessive tax, and of this the plaintiff complains.

It does present an inequitable situation, but the tax gatherer is not acquainted with equity. And therefore the tax collector has given the plaintiff the benefit of this revised statute of allowing him to carry forward his losses which would have fairly adjusted the program, but it overlooks the fact that the tax gatherer claimed interest on that $90,000.00 and that is what this suit is about. The taxpayer says that under his contract when completed he didn't have the income and

since it was ultimately not a profit and not his he should not be taxed, but the literal wording of tax statutes is followed in preference to equitable interpretations.

This being the situation we find that under the law as written the government has acted within its legal rights and is not bound to make any refund to the plaintiff and the plaintiff's cause is denied.